UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COLLEEN F. COTTER, | CASE NO. 1:23-CV-00028-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

### INTRODUCTION

Plaintiff Colleen Cotter challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On January 9, 2023, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Jan. 9, 2023). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Cotter filed for DIB on March 12, 2021, alleging a disability onset date of January 20, 2021. (Tr. 170). After her claim was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (Tr. 82-89, 91-98, 176-77). Ms. Cotter (represented by counsel) and a vocational expert (VE) testified before the ALJ on January 12, 2022. (Tr. 34-80).

On January 25, 2022, the ALJ found Ms. Cotter was not disabled. (Tr. 19-30). The Appeals Council denied Ms. Cotter's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see* 20 C.F.R. §§ 404.955, 404.981). Ms. Cotter timely filed this action on January 9, 2023. (ECF #1).

FACTUAL BACKGROUND

I. **Administrative Hearing**

Before the ALJ, Ms. Cotter testified she struggles daily due to an injury affecting her fine motor skills in her dominant hand and arm. (Tr. 44). She has numbness in her right hand and fingers that affects her writing, buttoning, zipping, brushing her teeth and hair, buckling her seatbelt, lifting light objects, and cleaning herself. (*Id.*). She has burned herself because she cannot sense temperatures in her right hand. (*Id.*). It is nearly impossible for her to lift anything with her right hand higher than shoulder level; her right arm will shake if she raises it in front of her. (Tr. 45, 48). Her left hand still has sensation. (Tr. 46-47).

Her daughter moved in with her because she needs help with walking her dog, yard work, grocery shopping, laundry, dusting, vacuuming, and other daily activities. (Tr. 44-45). Her daughter cuts her food into bite-sized pieces for her. (Tr. 47). Her daughter works outside the home; her children (ages one and three) stay with their other grandmother when she is at work. (Tr. 63).

Ms. Cotter had surgery the previous September that improved her neck pain, but weakness and numbness remained. (Tr. 45-46). She related that the nerve damage could possibly be permanent. (Tr. 46). Imaging of her right shoulder did not reveal any nerve damage. (Tr. 48).

Ms. Cotter has migraines that are controlled with medication. (Tr. 48). She sometimes needs to take Topamax daily and if she does not take Fioricet in time, her headaches will worsen.

2

(Tr. 49). She takes medications for her mood, including Lexapro, with good effect. (Tr. 64). She also takes Robaxin for muscle spasms and Diazepam as needed to sleep. (*Id.*). She also suffers from sciatica. (Tr. 50). She has low back pain from the moment she awakes to the moment she tries to get some rest. (*Id.*).

Before her injury on January 20, 2021, Ms. Cotter worked 60 hours a week as a home healthcare nurse caring for disabled individuals in their homes. (Tr. 51). She injured herself while caring for a quadriplegic patient. (Tr. 53-54). She generally worked a 16-hour shift, from 10:00 p.m. to 2:00 p.m. the following day. (Tr. 53). She would have to lift, push, and pull up to 50 pounds in this job; her clients weighed up to 220 pounds, but she used a Hoyer lift as needed. (Tr. 54-55).

She had also worked as an LPN at Geauga County Board of Developmental Disabilities to pass medications and oversee STNAs. (Tr. 55-56). In this job, she was required to lift up to 30 pounds. (Tr. 56). She had a similar role as a charge nurse in Blue Ash, Ohio, supervising STNAs and administering medication. (Tr. 57). She also worked as a floral designer in 2007 assembling floral arrangements. (Tr. 59-60). She could be required to lift up to 50 pounds if she were making a large design, such as a casket spray. (Tr. 60).

The VE testified that Ms. Cotter had past work at the medium, skilled level, classified in the Dictionary of Occupational Titles as home healthcare nurse, licensed practical nurse, and floral designer. (Tr. 65-66). He stated that a hypothetical individual of Ms. Cotter's age, education, and limitations described in the RFC could not perform Ms. Cotter's past work, but could perform representative work such as cafeteria attendant, cleaner/housekeeping, and cashier II. (Tr. 66-68). The individual could still perform these representative jobs if limited to frequent handling

and fingering with the right upper extremity. (Tr. 68-69). However, if the individual were limited to occasional handling and fingering bilaterally, that person could not perform the previously identified representative jobs but could perform other jobs, including children's attendant, counter clerk, and usher. (Tr. 69-70). The individual could perform the same work if limited to simple tasks, limited routine, and repetitive tasks. (Tr. 71). The individual could not work if off task 20% in a workday. (Tr. 70-71).

## II.     Personal and Vocational Evidence

Ms. Cotter was 47 years old on her alleged onset date and 48 years old at the administrative hearing. (Tr. 28). She has at least a high school education. (*Id*.). She previously worked as a home health care nurse, a licensed practical nurse, and a floral designer. (*Id*.).

## III.    Relevant Medical Evidence[1]

Ms. Cotter presented to the emergency room on January 21, 2021 with gradually worsening severe right sided neck pain that radiated to her right hand. (Tr. 274). The pain worsened with movement and seemed to improve minimally when lying still and included numbness and tingling of the right hand. (*Id*.). She reported paresthesia of the right second and third fingers, but sensation was intact to light touch upon examination. (Tr. 275). She was negative for stroke and denied headache or shortness of breath. (Tr. 277). Her symptoms were consistent with cervical radiculopathy. (Tr. 276). She underwent a chest X-ray but an MRI was unwarranted based on her symptoms. (*Id*.). She received IV fluids, Toradol, Robaxin, and Tylenol and was discharged in stable condition. (*Id*.).

---

[1]     Ms. Cotter only raises issue concerning her physical impairments. (*See* ECF #10, PageID 899, 906-19). I therefore limit my summary of relevant medical evidence to that pertinent to her physical impairments; all other arguments are waived.

Imaging from January 28, 2021 revealed degenerative cervical disc disease, severe at C6-C7, with loss of normal lordosis. (Tr. 262). A February 22, 2021 cervical spine MRI confirmed multilevel cervical degenerative changes greatest at C5-C6 and C6-C7 with associated right central extrusion and ventral cord flattening but no cord signal abnormality. (Tr. 242-46).

The same day, Ms. Cotter was evaluated for her neck pain by Crystal Clinic; she described having chronic neck pain since a 2007 car accident. (Tr. 263). At this visit, she complained of right hand pain that started a week earlier; despite self-treating with a TENS unit, icing, heating, and using NSAIDS, she rated her pain at 8/10. (*Id.*). Ms. Cotter stated she was dropping items with her right arm. (*Id.*). She had a normal gait on the right and left and did not use an assistance device. (Tr. 265). She had partial range of motion in her cervical spine, which was painful on the right with flexion and rotation; she exhibited no pain on the left with range of motion. (*Id.*). Spurling's test was positive on the right. (*Id.*). Motor skills were generally 5/5 bilaterally, although there was mild right triceps weakness. (Tr. 265-66). She was assessed with degenerative disc disease in the cervical spine and cervical radiculopathy due to intervertebral disc disorder. (Tr. 266). She received lifting restrictions for her job and a therapy prescription for scapular stabilization and pain relief and recommended to follow up if not improved. (*Id.*).

On April 6, 2021, Ms. Cotter presented to Crystal Clinic complaining of 8/10 pain, more on the left than the right; she also related difficulty with buttons, zippers, and handwriting. (Tr. 308). She demonstrated a normal gait bilaterally but held her head tipped to the right. (Tr. 310). Findings from a February 22, 2021 cervical MRI were reviewed and included a large herniated disc at both C5-C6 and C6-C7. (Tr. 308-10). She was recommended and elected to proceed with an

anterior cervical discectomy and fusion at both C5-C6 and C6-C7. (Tr. 310). She was expected to return to her normal occupation. (*Id.*).

On July 16, 2021, Ms. Cotter visited Kim Dahodwala, APRN-CNP at Allied Health and Chiropractic for treatment of her neck pain. (Tr. 468). NP Dahodwala recounted Ms. Cotter's initial injury and indicated she had not received any therapy and had not seen a spine specialist. (*Id.*). Ms. Cotter complained of daily severe pain in her neck rated at 7/10. (*Id.*). She described the pain as shooting through her posterior upper arm/triceps with spasms, initially on the right but newly radiating through her left side to her left hip. (*Id.*). On her right side, she has constant numbness in her right hand in the second through fifth digits; her index finger is very stiff; her right arm is weak; and she had difficulty with fine motor skills on her right hand due to numbness. (*Id.*). She did not endorse similar issues on her left. (*See id.*). She also described an increase in migraines since the incident. (*Id.*). She reported some relief with baclofen, Robaxin, Tylenol, and a TENS unit. (*Id.*). Examination indicated antalgic gait to the right, tenderness in her left side of neck and right side from hip through the right upper extremity, limited range of motion with pain and stiffness, and pain in the upper cervical spine. (*Id.*). She was recommended to continue using her TENS unit, ice, heat, and home exercises. (Tr. 471).

On September 1, 2021, Ms. Cotter underwent surgery for cervical discectomy and fusion at C5-C6 and C6-C7, anterior plating C5-C7, and allograft. (Tr. 595-96). At a chiropractic follow up on October 16, 2021, Ms. Cotter reported increased mobility post-surgery but still had pain when looking down. (Tr. 492). She reported aching, stiffness, tingling, and numbness in the left side of her neck and trapezius and right neck through her upper extremity. (*Id.*). Objective findings

showed moderate to severely reduced range of motion in the cervical spine with pain and stiffness. (*Id.*). She was recommended to continue her chiropractic treatment plan as scheduled. (Tr. 493).

## IV. Medical Opinions

**Laurence Bilfield, M.D.** On April 28, 2021, Ms. Cotter met with Laurence Bilfield, M.D., ABOS, AAOS, ABIME, for an independent medical evaluation requested by the Bureau of Workers' Compensation. (Tr. 342-48). Ms. Cotter reported being injured on January 20, 2021 while using a Hoyer lift to assist a quadriplegic patient who lived with his family; because the patient was nonverbal, no other witnesses could confirm the event. (Tr. 342). She had not returned to work since the incident and continued with lifting restrictions of less than ten pounds. (Tr. 343). She rated her pain as 6/10 when sitting and 10/10 at worst. (Tr. 344). On examination, she was in no acute distress and had a normal gait. (*Id.*). She had tenderness on palpation of her cervical spine and bilateral trapezius; range of motion of the cervical spine noted flexion was 20 degrees, extension 10 degrees, left lateral bend 10 degrees, right lateral bend 5 degrees, left rotation 30 degrees, and right rotation 20 degrees. (Tr. 344-45). Motor exam was normal bilaterally, but she exhibited positive Tinel's and Phalen's signs on the left; sensory exam was normal to light touch. (Tr. 345).

Dr. Bilfield opined he could not support cervical radiculopathy or other diagnosis as related to the injury alleged on January 20. (Tr. 347). He thought it possible that her complaints were related to the cervical spine findings on the MRI; however, no EMG had been done to confirm, and she had findings on examination consistent with carpal tunnel syndrome. (*Id.*).

**State Agency Reviewers.** On May 8, 2021, W. Scott Bolz, M.D., reviewed Ms. Cotter's medical record and found she was capable of light work, with additional limitations including

occasional climbing of ladders, ropes, and scaffolds, and frequent reaching with bilateral upper extremities. (Tr. 85-89). He further found she should not work at heights and should avoid concentrated exposure to workplace hazards. (Tr. 87). On August 5, 2021, Elizabeth Das, M.D., reviewed Ms. Cotter's record on reconsideration and generally affirmed Dr. Bolz's findings, although she further limited Ms. Cotter to occasional crouching, crawling, climbing ramps and stairs, and balancing, and never climbing ladders, ropes, and scaffolds. (Tr. 94-97).

**Jack Rutkowski, M.D.** On June 25, 2021, Dr. Rutkowski wrote a letter outlining his treatment of Ms. Cotter for her neck injury. (Tr. 461-62). In it, he opined that she has cervical radiculopathy radiating down her arm due to herniated discs, confirmed by MRI and physical examination proving neurological deficit including weakness, numbness, and tingling. (Tr. 461). He opined that Ms. Cotter's findings were consistent with the initial work-related injury. (Tr. 462).

**Dominic Haynesworth, M.D.** On September 9, 2021, Dr. Haynesworth noted Ms. Cotter's neck pain, reduced range of motion, right arm weakness, and migraines would limit her to sitting and/or standing for 20 minutes at a time and about 2 hours in a normal workday, would require additional breaks to walk for 4-5 minutes every 20-30 minutes, and a need for 5-6 additional 10-minute breaks in a workday. (Tr. 465). She did not require a cane or other hand-held assistive device. (Tr. 466). She did not have significant limitations with reaching, handling, or fingering, but could only use her right arm 50% of the time. (*Id.*). She was capable of low-stress work but would be off task 25% or more of the time and would be absent more than four days per month. (Tr. 466-67).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

The ALJ issued an unfavorable decision on January 28, 2022. (Tr. 16). At Step One, the ALJ determined Ms. Cotter meets the insured status requirements of the Social Security Act through March 31, 2024 and that she has not engaged in substantial gainful activity since January 20, 2021, the alleged onset date. (Tr. 21). At Step Two, he determined Ms. Cotter had a severe impairment of degenerative disc disease of the cervical spine, status-post anterior cervical discectomy and fusion of C5-C6 and C6-C7. (*Id.*). After considering Listing 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root), the ALJ determined Ms. Cotter does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 23). The ALJ reviewed Ms. Cotter's medical record, function report, administrative hearing testimony, and medical opinions and concluded she had an RFC capable of light work with additional limitations including:

> occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, crouch and crawl; frequently reach with the bilateral upper extremities; restricted from hazards, such as unprotected heights or machinery, but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; and frequently handle with the right upper extremity.

(Tr. 24). At Step Four, the ALJ determined Ms. Cotter could not perform past relevant work. (Tr. 27-28). At Step Five, the ALJ concluded jobs exist in significant numbers in the national economy that Ms. Cotter can perform, including cafeteria attendant, cleaner housekeeping, and cashier. (Tr. 28-29).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court

interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision is supported by substantial evidence, the Court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); accord *Shrader v. Astrue*, No. 11 13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## DISCUSSION

Ms. Cotter raises three issues for review:

1.  Whether the ALJ erred at Step Three when he failed to find that she met or medically equaled Listing 1.15;

2.  Whether the ALJ erred when he failed to find Dr. Haynesworth's opinion persuasive and failed to incorporate his opined limitations into the RFC; and

3.  Whether the ALJ committed harmful error when applying SSR 16-3p.

(ECF #10, PageID 899, 906-19). Because none are a sufficient basis to warrant remand, I recommend the District Court **AFFIRM** the Commissioner's decision in full.

I.      **The ALJ did not err in finding Ms. Cotter did not meet or medically equal Listing 1.15.**

Ms. Cotter first argues the ALJ erred at Step Three by not finding she met Listing 1.15. (*Id.* at PageID 906-10). She further argues that she medically equaled the Listing due to her cervical spine impairments. (*Id.*). The Commissioner responds that Ms. Cotter does not satisfy her burden at Step Three to demonstrate she meets or equals a Listing by alleging sufficient facts supporting such a finding. (ECF #13, PageID 929-31). Her argument that her complaints are related to her cervical spine are not grounded in law and do not demonstrate she met the criteria of Listing 1.15D(3), particularly where no medical source in the record found she met those criteria. (*Id.*). I agree Ms. Cotter has not demonstrated she met or medically equaled Listing 1.15.

At Step Three, a claimant will be found disabled if her impairment meets or equals a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). As such, a claimant who meets the requirements of a listed impairment, as well as the durational requirement, is conclusively deemed disabled and entitled to benefits. SSR 17-2p provides guidance for the ALJ to determine whether a claimant medically equals a listed impairment where the individual's symptoms may not specifically meet, but are analogous to, a listed impairment. 82 Fed. Reg. 57, 15263.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). It is the claimant's burden to establish the claimed impairments meet or are medically equivalent to a listed impairment. *See, e.g., Lett v. Colvin*, No. 1:13 CV 2517, 2015 WL 853425, at *15 (N.D. Ohio Feb. 26, 2015). To "meet" the listing, a claimant must satisfy all applicable criteria. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 1.15 requires a claimant to meet four discrete elements:

A.      Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):
   1.      Pain; or
   2.      Paresthesia; or
   3.      Muscle fatigue.

AND

B.      Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
   1.      Muscle weakness; and
   2.      Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
   3.      Sensory changes evidenced by:
      a.      Decreased sensation; or
      b.      Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
   4.      Decreased deep tendon reflexes.

AND

C.      Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AND

14

> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
>
> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
>
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.15.

When assessing whether a claimant meets or medically equals a listing, the ALJ must make sufficiently clear the reasons for the decision so this Court may conduct meaningful review. *See Reynolds v. Comm's of Soc. Sec.*, 424 F. App'x 411, 416-17 (6th Cir. 2011). Additionally, the ALJ must evaluate the evidence, compare it to the requirements of the relevant Listing, and explain the reasons for their conclusion. *Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *5 (6th Cir. March 6, 2017); *see also Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014) ("Although it is the claimant's burden of proof at Step 3, the ALJ must provide articulation of his Step 3 findings that will permit meaningful review.").

Here, the ALJ provided the following analysis of Listing 1.15:

> While there is evidence of righthanded weakness due to degeneration of the claimant's cervical spine, there is no indication that the claimant has a documented medical need for an ambulation assistive device. This fails the paragraph "D" criteria. Therefore, the undersigned finds that the claimant does not meet the criteria for Listing 1.15.

(Tr. 23). Focusing on the D criteria of Listing 1.15, Ms. Cotter takes issue with the ALJ's analysis, asserting that "a cervical spine issue does not require a need for an ambulatory device, but rather that a person has documented difficulty with fine and gross movements." (ECF #10, PageID 907). She provides no support for this assertion. Regardless, her argument misstates the Listing criteria and misapprehends the ALJ's analysis.

The paragraph D criteria of Listing 1.15 the ALJ cited requires a claimant to satisfy one of three distinct elements:

(1)     use of a bilateral handheld assistive device; or

(2)     difficulty in fine and gross movements in *one* upper extremity *and* a need for a handheld assistive device; or

(3)     inability to use *both* upper extremities due to difficulty with fine and gross movements.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.15D (emphasis original). Ms. Cotter correctly states that a need for an ambulatory device is not a *per se* requirement contained in the D criteria. But she overlooks that, if not using a handheld assistive device (as required by criteria D(1) and D(2)), a claimant must be unable to use *both* upper extremities due to difficulty with fine and gross movements as per criteria D(3). *See id.*

The record reveals that Ms. Cotter only had issues with fine and gross motor skills on her right side. Although she occasionally complained of left-side pain, no documented medical evidence or testimony confirms that she had any difficulty with fine or gross movement in her left upper extremity. (*See, e.g.*, Tr. 468) (describing left-sided pain and right-sided difficulty with fine motor skills due to numbness). The ALJ's analysis is consistent with this: he describes right-sided impairment and discusses the lack of a need for an assistive device. The ALJ did not need to

16

describe explicitly Ms. Cotter's inability to meet the D(3) criteria in the absence of any record evidence documenting bilateral difficulty with fine or gross motor skills.

I find the ALJ's reasoning sufficient to conduct appropriate judicial review and conclude that substantial evidence supports the ALJ's decision. I therefore decline to recommend the District Court order remand.

## II. The ALJ did not err in his analysis of Dr. Haynesworth's opinion and was not required to include his opined limitations.

Ms. Cotter next argues the ALJ erred in evaluating Dr. Haynesworth's opinion as it was the "most relevant" of the medical opinions in the record. (ECF #10, PageID 910-14). She argues the ALJ should not have found Dr. Haynesworth's opinion only partially persuasive and failed to note the limitations on sitting/standing/walking, restrictions on lifting and carrying, and restrictions on use of the right upper extremity. (*Id.* at 912). The Commissioner counters that substantial evidence supports the ALJ's decision not to include all of Dr. Haynesworth's opined limitations. (ECF #13, PageID 931-33). I find Ms. Cotter's argument unavailing and determine the ALJ's analysis of Dr. Haynesworth's opinion accorded with the regulations.

Because Ms. Cotter filed her application after March 27, 2017, medical opinions are evaluated under the regulations found in 20 C.F.R. § 404.1520c. Under these revised regulations, the ALJ is to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* at § 404.1520c(b).

Despite Ms. Cotter's allusions to Dr. Haynesworth's status as a "treating source" (ECF #10, PageID 910), the ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, is not bound by the "treating physician rule," and is not required to give a treating source controlling weight. *See Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D.

17

Ohio Apr. 8, 2020). In determining the persuasiveness of a medical opinion, the ALJ considers

five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length

of treatment relationship, frequency of examinations, purpose of the treatment relationship, and

examining relationship; (4) specialization; and (5) other factors that tend to support or contradict a

medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ must articulate the consideration given

to the medical opinions in the record, grounded in the two "most important factors" of

supportability and consistency. 20 C.F.R. § 404.1520c(a). An ALJ must explain how he considered

the factors of supportability and consistency, and "may, but [is] not required to" explain the

remaining factors of relationship with the claimant, specialization, or other factors, absent the

ALJ's finding that two opinions are "equally" persuasive. *See* 20 C.F.R. § 404.1520c(b)(2)-(3).

An ALJ need not specifically use the words "supportability" and "consistency." *Cormany v.*

*Kijakazi*, No. 5:21CV933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (stating "an ALJ

need not specifically use the terms 'supportability' or 'consistency' in his analysis"). Rather, I must

look to the whole document when reviewing the ALJ's decision. *Hill v. Comm'r of Soc. Sec.*, 560 F.

App'x 547, 551 (6th Cir. 2014). The ALJ must make the reasons for the supportability and

consistency analysis sufficiently clear for subsequent review to determine whether substantial

evidence supports the claimant's disability determination. *Id.* Omission of the words

"supportability" and "consistency" does not mean the ALJ did not consider those factors. *Hardy v.*

*Comm'r of Soc. Sec.*, No. 2:20-cv-4097, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021). "So long

as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the

necessary requirements to survive this court's review." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x

433, 440 (6th Cir. 2012). I conclude that the ALJ's decision, when viewed as a whole, permits

sufficient review.

Here, the ALJ analyzed Dr. Haynesworth's opinion as follows:

the undersigned is partially persuaded by the opinion of Dominic Haynesworth, M.D. On September 9, 2021, Dr. Haynesworth opined that the claimant had decreased cervical spine range of motion with pain and stiffness, could sit and stand 20 minutes at a time for a total of 2 hours in an 8-hour workday, could occasionally lift up to 10 pounds, would be off-task 25% of each workday and she would likely miss 4 days of work each month due to her cervical spine disorder. The evidence does show that the claimant has cervical degeneration with radiculopathy, which is detailed above. However, there is no evidence that the claimant's condition would cause significant time off work or off-task behavior on a consistent basis. Rather, the evidence shows that after her surgery, the claimant's mobility improved. The undersigned notes that this opinion was authored a week after her cervical spine surgery and Dr. Haynesworth would not have known if the surgery was effective at alleviating her pain and/or radicular symptoms.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by surgical records and medical imaging. However, statements that the claimant's mobility had improved a month after her surgery suggests that she may not be as limited as she purports.

(Tr. 27). In finding Dr. Haynesworth's opinion partially persuasive, the ALJ references his prior

analysis discussing Ms. Cotter's cervical degeneration with radiculopathy. That analysis contains

factors going to supportability and consistency, such as:

**Ms. Cotter's own testimony:**

At the hearing, the claimant [testified] that she is unable to work due to her neck pain and issues with her hand and arm. She suffers from numbness and weakness in her upper extremities. While her neck pain as improved since she had surgery, her upper extremity pain and weakness has not improved. The claimant testified that she has a hard time gripping things with her right hand, which is her dominant hand. The claimant also struggles with issues with her lower back. (Tr. 24).

**Objective medical findings:**

Physical examination notes show painful range of motion, mild triceps weakness, but normal sensation and weakness in her hands despite her allegations of numbness. X-rays revealed degenerative disc disease with loss of normal lordosis. She was diagnosed with degenerative disc disease and cervical radiculopathy and recommended physical therapy. (Tr. 25) (citations omitted).

**Other providers' treatment notes:**

On September 1, 2021, the claimant underwent an anterior cervical discectomy and fusion of C5-6 and C6-7 with grafting and hardware. (*Id.*).

Evidence from April shows that the claimant was having difficulty with buttons, zippers and hand writing. She reported ongoing neck pain and stiffness, worse on the right. Treatment notes show that the claimant had two very large disc herniations at C5-6 and C6-7, both to the right side, which is consistent with her complaints of pain and numbness. She was recommended an anterior cervical discectomy and fusion. (*Id.*).

At the end of the month, the claimant underwent an evaluation for Workers' Compensation. An examination revealed significantly reduced range of motion, tenderness to palpation, and positive Tinels's and Phalen's signs. (*Id.*).

**Dr. Haynesworth's own treatment notes:**

Chiropractic notes show tenderness to palpation, limited range of motion due to pain and stiffness, and pain in the upper cervical spine. The claimant was assessed as having a sprain of her cervical ligaments and cervical spine disorder. She was recommended use of a TENS unit, as well as ice, heat, and home exercises. She engaged in chiropractic care for the remainder of July and the beginning of August. (*Id.*).

This makes clear that the ALJ considered the supportability and consistency factors when finding Dr. Haynesworth's opinion partially persuasive. I find no error here.

Ms. Cotter's argument regarding incorporating Dr. Haynesworth's limitations into the RFC analysis is likewise unavailing. The ALJ considered the relevant factors and ultimately decided Ms. Cotter required certain limitations due to her cervical spine issues, some of which were contained in Dr. Haynesworth's opinion. Ultimately, the ALJ included in the RFC limitations on

20

climbing ladders, ropes, or scaffolds, limitations on reaching with her bilateral upper extremities, and limitations on handling with her right upper extremity. (*Compare* Tr. 24 *with* Tr. 464-67). Ms. Cotter has not demonstrated that she requires additional limitations.

I find the ALJ's determination supported by substantial evidence as to this issue and recommend the District Court affirm.

### III. The ALJ appropriately considered Ms. Cotter's complaints of pain and followed SSR 16-3p.

Ms. Cotter's final argument is that she satisfies the criteria set forth in Ruling 16-3p and that the ALJ's determination was in error and not supported by the record. (ECF # 10, PageID 915-18). She claims her subjective symptom complaints are confirmed in the medical record and support a finding of disability. (*Id.* at PageID 917). The Commissioner opposes, arguing the ALJ's determination of a claimant's subjective symptoms are given deference on review. (ECF #13, PageID 934). The ALJ considered the longitudinal record and considered the required factors contained in SSR 16-3p, thereby supporting his decision with substantial evidence. (*Id.* at PageID 934-35). I agree with the Commissioner and find no reason to recommend a remand.

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2017 WL 5180304. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.*

At the second stage, recognizing that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-

medical evidence, the ALJ considers the entire case record, including the objective medical evidence; the individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case. *Id.* In addition, the ALJ uses the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate the individual's statements:

1.  A claimant's daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6.  Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7.  Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors, only those germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

The ALJ is not required to accept the claimant's subjective complaints and may discount subjective testimony when the ALJ finds those complaints are inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. The ALJ may not reject an individual's statements about her symptoms solely because the objective medical evidence does not substantiate the degree

of impairment-related symptoms alleged but must carefully consider other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2); *see also* SSR 16-3p, 2017 WL 5180304 at *6.

The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. The ALJ's evaluation must be limited "to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *11. The ALJ need not use any "magic words," so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

The Commissioner is correct that an ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

Here, the ALJ analyzed the appropriate factors and the objective medical evidence in accordance with the regulations and adequately articulated his reasons for finding Ms. Cotter's statements concerning the intensity, persistence, and limiting effects of her symptoms not consistent with the evidence. As the decision notes:

> In her application for benefits, the claimant alleged that cervical radiculopathy and stenosis limits her ability to work. At the hearing, the claimant that she is unable to

work due to her neck pain and issues with her hand and arm. She suffers from numbness and weakness in her upper extremities. While her neck pain as improved since she had surgery, her upper extremity pain and weakness has not improved. The claimant testified that she has a hard time gripping things with her right hand, which is her dominant hand. The claimant also struggles with issues with her lower back. For these reasons, the claimant contends that she is unable to meet the demands of competitive employment on a regular and continuous basis. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the medical evidence. (Tr. 24) (citations omitted).

Review of the record shows that the claimant suffered a work injury in January 2021. She stated that she was lifting a quadriplegic patient when she was working as a nurse, suffering a back injury. The claimant described feeling a spasm and pull in her neck when she lifted the patient and her pain gradually worsened over the next few hours. On January 21, 2021, the claimant sought treatment for neck pain that radiates down her right arm to her hand. She reported numbness in her thumb, index and middle fingers. She rated her pain as 8 out of 10, with 10 being the most severe, and any sort of movement increases it. Physical examination notes show painful range of motion, mild triceps weakness, but normal sensation and weakness in her hands despite her allegations of numbness. X-rays revealed degenerative disc disease with loss of normal lordosis. She was diagnosed with degenerative disc disease and cervical radiculopathy and recommended physical therapy. Rather than starting physical therapy, the claimant sought chiropractic care. An MRI from February 2021 showed multilevel degenerative changes, greatest at C5-6 and C6-7, with right central extrusions and ventral cord flattening and scattered foraminal stenoses. (Tr. 25) (citations omitted).

Treatment notes from August also show that the claimant complained of constant numbness in her fingers, dropping things, and significant neck pain. While a lot of this treatment is not documented in the record before the undersigned, the claimant alleged to have engaged in steroids, physical therapy, and massage without any improvement in her pain. Physical examination notes show trace weakness in his right arm, muscle spasms, and limited range of motion. X-rays showed anterior subluxation at C4 in relation to C5 and posterior subluxation at C3 in relation to C4, without instability. She expressed desire to go forward with the recommended surgery. On September 1, 2021, the claimant underwent an anterior cervical discectomy and fusion of C5-6 and C6-7 with grafting and hardware. Evidence from after this surgery shows that the claimant's mobility improved but still had

some cervical spine pain. Considering the objective medical evidence, the undersigned finds that the claimant would be limited in her ability to climb, stoop, crouch, crawl, reach, and work around hazards. (Tr. 25-26) (citations omitted).

With this analysis, it is clear the ALJ considered the relevant factors, including Ms. Cotter's complaints of pain, weakness, and her purported daily activities, and sufficiently articulated how those factors, in conjunction with the objective medical evidence, do not support the alleged intensity, persistence, and limiting effects of her symptoms. The ALJ supported his conclusions with citations to substantial evidence in the record. Ms. Cotter cannot refute the ALJ's conclusions by reciting a list of self-reported symptoms, no matter how extensive, where the ALJ's conclusions are themselves supported by substantial evidence. *See* 20 C.F.R. § 404.1529 (statements about your pain and other symptoms will not alone establish you are disabled). Moreover, even if substantial evidence supported Ms. Cotter's position, this court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.

Because the ALJ applied the correct legal standards and his decision is supported by substantial evidence, I recommend the District Court decline to remand on this basis.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: January 11, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).